■ CHOCK 34TH ST. OPERATING, INC., Appellant, v CHOCK FULL O'NUTS CORPORATION, Respondent.—Order and judgment (one paper), Supreme Court, New York County (Beverly Cohen, J.), entered on January 31, 1991, which, *inter alia,* declared that shares of stock pledged by plaintiff in a Stock

Pledge Agreement were collateral for all the agreements listed in Exhibit A to the Stock Pledge Agreement, and that tenders made by plaintiff on July 11, 1990 did not constitute full payments of the amounts due under a Stock Purchase Agreement unanimously modified, on the law, so as to adjudge and declare that the tenders made on July 11, 1990 constituted full payment of the amounts due and owing under the Stock Purchase Agreement, but that such tenders did not satisfy all indebtedness secured by the Stock Pledge Agreement, and otherwise affirmed, without costs.

The Stock Purchase Agreement, Promissory Note, and Stock Pledge Agreement at issue in this action are part of a series of 17 transactions whereby plaintiff and 16 other single purpose corporations are acquiring real estate held by defendant Chock Full O'Nuts and a related company. Defendant Chock Full O'Nuts has taken the position that all 17 single purpose corporations are in default. The validity of those underlying defaults has been upheld in an order and judgment entered in a third-party action *(Brill & Meisel v Chock 532 Mad. Operating,* NY County Index No. 23458/85) which has been appealed to this court. It is unnecessary to reach any issue raised in this related appeal on the instant appeal, because regardless of whether or not the defaults occurred, the Stock Pledge Agreement at issue on this appeal provides that a default under separate agreements may be deemed a default under the Stock Pledge Agreement only at the option of Chock Full O'Nuts. Chock Full O'Nuts must take some affirmative step to exercise that option *(see, Perrotta v Western Regional Off-Track Betting Corp.,* 98 AD2d 1). Since the record shows that Chock Full O'Nuts has not taken any affirmative step to exercise its option, and since an exercise of the option may not be inferred from any other notice served on this plaintiff or on any of the related single purpose corporations, the IAS court erred in concluding that the total amount due on all of the agreements was due on the Stock Pledge Agreement at the time that plaintiff tendered the full amount due under the Stock Pledge Agreement.

However, this does not mean that the Stock Pledge Agreement is terminated or that the plaintiff is entitled to return of the underlying collateral. Termination of the Stock Pledge Agreement occurs only when all indebtedness secured thereby has been fully paid. Plaintiff concedes on appeal that the Stock Pledge Agreement collateralizes its debts under all of the other agreements. Accordingly, regardless of whether or not any valid notices of default were served, the Stock Pledge

Agreement secures debts under all of the other agreements, and the failure of the plaintiff to make full payment on those other debts prevents termination of the Stock Pledge Agreement.

The equitable and judicial estoppel arguments now raised by the plaintiff were never raised before the IAS court, and the plaintiff has waived the opportunity to have those issues considered on appeal *(Pastore v Zlatniski,* 122 AD2d 840). Concur—Carro, J. P., Milonas, Asch, Kassal and Rubin, JJ.