Glenn THOMPSON, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Third–Party Plaintiff,

v.

SARNAFIL, INC. and Sarnafil Services, Inc., Third–Party Defendants.

No. 93 Civ 4506 (VLB).

United States District Court, S.D. New York.

Sept. 6, 1994.

Elizabeth A. Graziane, Powers & Santola, Albany, NY, for plaintiff.

Mark C. Dillon, John J. Loveless, Cerussi & Spring, White Plains, NY, for defendant.

Raymond D'Erasmo, Savona & Scully, New York City, for third-party defendant Sarnafil Services.

Samuel F. Simone, Kornfeld, Rew, Suffern, NY, for third-party defendant SI.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This litigation grows out of a workplace accident injuring plaintiff Glenn Thompson, a Massachusetts resident, while employed by third-party defendant Sarnafil Services, Inc. (the "employer"), a Massachusetts contractor, during performance of construction work at premises of defendant International Business Machines Corporation ("IBM") in the Southern District of New York. Jurisdiction is based on diversity of citizenship. Plaintiff asserts a claim against IBM, and relies upon New York Labor Law 240. IBM has filed third-party complaints against alleged employers of plaintiff on grounds they contributed to the accident.

Plaintiff and IBM ask the court to rule that New York law applies to the case. The employer seeks dismissal on grounds of coverage by Massachusetts' workers compensation law. Third party defendant Sarnafil, Inc. ("SI"), which appears to have a relationship of unknown nature with the employer, moves for summary judgment on the ground of lack of involvement in plaintiff's accident.[1]

---

**1.** The third-party defendants also make various requests for rulings concerning the obligations, if any, of New York's Workers' Compensation Fund, which is not a party to this litigation. Such applications are accordingly not considered here.

The employer's motion to dismiss based upon applicability of Massachusetts' workers compensation law to a Massachusetts employer's relationship to a Massachusetts employee is granted in part insofar as it concerns IBM's third party claims against the employer based upon negligence or other common law claims; the motion is denied without prejudice insofar as it concerns IBM's third party complaint to the extent related to any liability under the New York Labor Law. SI's motion to dismiss on grounds of lack of connection with plaintiff's injury is denied without prejudice.

New York choice of law rules are applicable, and New York law will determine the liability of IBM, if any, with respect to any provisions of the New York Labor Law. It would be premature to rule on the law applicable to IBM's claim against the third-party defendant employer with respect to any Labor Law liability until it is determined whether or not any New York Labor Law provisions impose liability upon IBM under the facts of this case.

## II

■ In this diversity of citizenship case, the choice-of-law rules of New York, the site of the forum, are applicable. *Klaxon Co. v. Spentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *AroChem International v. Buirkle*, 968 F.2d 266, 269 (2d Cir.1992).

■ New York courts do not treat all of the law of a single state's law as necessarily applicable to all aspects of a suit; instead, New York courts look to the interests of states the law of which is potentially applicable to particular issues under consideration. In implementing this interest-based approach, New York's highest court has applied workers' compensation laws of other states where out-of-state employers are involved and the balance of relevant interests supports that result. *Cooney v. Osgood Machinery*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); see also *Roach v. McGuire & Bennett*, 146 A.D.2d 89, 539 N.Y.S.2d 138 (3d Dept.1989); *Platano v. Norm's Castle*, 830 F.Supp. 796 (S.D.N.Y. 1993); *Boyle v. Texasgulf Aviation*, 696 F.Supp. 951 (S.D.N.Y.1988); *Lewis v. Chemetron Corp.*, 448 F.Supp. 211 (W.D.Pa.1978).[2]

■ Massachusetts law protects employers who pay workers' compensation contributions in that state from tort liability in connection with workplace injuries. 28 Mass. Workmen's Compensation Law § 23 ("Section 23") provides that acceptance of compensation constitutes a release of "all claims or demands at common law, if any, arising from the injury." The purpose of this and similar statutes in other states is to protect employers who contribute to the cost of no-fault protection from workplace injuries from being subjected to lawsuits based on the same injuries, thereby encouraging compliance with the compensation laws and making it practical to pay the premiums. See authorities cited *Gray v. Cleaning Systems*, 834 F.Supp. 123, 126–27 (S.D.N.Y.1993).

■ The Massachusetts workers' compensation law protects contributing Massachusetts employers from suits based on accidents occurring in or outside the state. *Saharceski v. Marcure*, 373 Mass. 304, 366 N.E.2d 1245 (1977); *English v. Hartford*, 739 F.Supp. 50 (D.Mass.1990). New York policy favors the recognition of such rules of other states in "enforcing the decision of its domiciliaries [employer and employee here] to accept the burdens as well as the benefits of that State's loss-distribution tort rules." *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 201, 491 N.Y.S.2d 90, 98, 480 N.E.2d 679, 686–87 (1985). The protection afforded out-of-state employers by such laws in their home states have been honored where an accident occurs in New York involving, as here, both out-of-state employers and out-of-state employees. *Gray v. Cleaning Systems, supra.*

■ As illustrated by *Cooney v. Osgood*, there is no sufficiently strong local New York interest contrary to the protection Massachu-

---

**2.** Unlike *Fiske v. Church of St. Mary's*, 802 F.Supp. 872, 882 (W.D.N.Y.1992), plaintiff here voluntarily accepted and is receiving workers' compensation from the fund of the state whose law is claimed to apply.

setts offers its contributing employers to lead to a contrary result. This is particularly true if the limitation to workers' compensation recovery applies to a Massachusetts resident.

Applicability of section 23 to statutory, as distinct from common law, claims imposed by another state in which work is performed presents questions of the extent to which the statute creates liability within the overall ambit of what would be deemed common law claims under the Massachusetts statute, and whether immunity from the statute would undermine safety policies of the state (New York) where the work was undertaken. These questions have not been fully considered by the parties, nor is it clear at this point whether any provisions of the New York Labor Law apply to the facts of this case.

### III

■ The impact of these principles on the defendant property owner (IBM) requires separate consideration. Inability of a New York property owner hiring a Massachusetts contractor to obtain any relief from tort damages if the contractor was actually negligent and for that reason responsible for an accident, is troublesome for at least three reasons:

(1) Such a result would defeat Massachusetts' policy that workers compensation be the method and the sole source of compensation of Massachusetts employees hired by Massachusetts contractors based upon acts of such contractors;

(2) The result might be to enhance damages collectible from the New York property owner to a level higher than if either solely Massachusetts or solely New York law were applied to all aspects of the case;

(3) As a consequence, interstate commerce in performance of construction work might be subjected to adverse discrimination contrary to the purposes of the Commerce Clause of the Constitution. See *Tetra Technologies v. Harter*, 823 F.Supp. 1116 (S.D.N.Y.1993).

Insofar as claims for negligence are concerned, these unfortunate results may be avoided by permitting IBM as a non-employer original defendant sued for a workplace injury, to deduct from any amount due to plaintiff, sums for which the employer would have been primarily responsible because of negligent conduct of the employer. See *Gray v. Cleaning Systems*, 834 F.Supp. 123, 126–27 (S.D.N.Y.1993). IBM would continue to be responsible for instructions, provision of materials, and other actions taken by it for which the employer would not be liable.

In order to permit plaintiff and IBM to contest the extent of the employer's actual responsibility, if any, dismissal of the employer as a party with respect to common law negligence claims is conditioned upon the employer furnishing witnesses, documents and other information which it would be expected or required to provide if a party. *Gray*, 834 F.Supp. at 127.

### IV

■ A more difficult problem is presented by the potential applicability of New York Labor Law 240, providing strict tort liability without fault for certain workplace accidents in the construction industry, although ignoring adjacent industries which may involve the same level of risk. Labor Law 240, although a loss-allocating provision, has been described by some lower New York courts as a conduct-regulating provision because it imposes more stringent liability for accidents and hence may have a greater deterrent effect than might flow from liability for negligence law alone. *Salsman v. Barden & Robeson*, 164 A.D.2d 481, 485, 564 N.Y.S.2d 546 (3d Dept.1990). Applicability of the statute to all work done in New York regardless of the domicile of the employer or employee may be important to avoid giving a competitive advantage to out-of-state contractors utilizing out-of-state workers and avoiding costs of doing business incurred by other contractors subject to New York's regulatory statute.

It is, however, premature to determine the impact of Labor Law 240 on IBM's third party complaint against the employer until it is determined whether or not section 240 is applicable to the facts of the present case.

## V

█ SI's motion to dismiss on the ground of lack of involvement with the incident at issue cannot be granted at this time because SI has not yet responded to interrogatories relevant to the issues presented. Conclusory statements by an interested party with superior access to information are insufficient to support contested relief. The extent to which discovery referred to by IBM as relevant may be required prior to decision on the merits may be evaluated when and if the motion is renewed.

## VI

At the next pretrial conference, the parties should be prepared to discuss the impact on the structure of the litigation of whatever insurance coverage exists for this accident.

It is often customary for insurance policies to cover workplace accidents in such a manner as more than one party is covered by the same or a related policy, and that many sources of liability for a single event may be covered by the same policy or policies. This, in turn, frequently has a significant impact on the structure of any litigation growing out of an accident and the leeway for parties to dispense with inter-defendant litigation. See, e.g., *Heggan v. PCM,* 1993 WL 525120, 1993 U.S.Dist. LEXIS 17785 (S.D.N.Y.1993). The parties are directed to furnish each other and the court with copies of all policies and endorsements directly or indirectly pertinent to plaintiff's accident.

SO ORDERED.